## Anderson v. Commonwealth.

(Decided June 21, 1918.)

### Appeal from Pike Circuit Court.

1. Criminal Law—Accomplice—Status.—The status of a witness as an accomplice must be established by evidence of his criminal participation in the offense charged, his indictment jointly with the defendant being insufficient.

2. Criminal Law—Evidence—Accomplice.—A witness, jointly indicted with defendant for killing deceased, from whom defendant took by force the pistol with which he did the killing, who was then ignorant of defendant's purpose in taking the pistol and could not have prevented him from taking it, was not an accomplice.

3. Criminal Law—Trial—Instructions—Accomplice.—In a prosecution for homicide, the evidence failing to establish the status of a witness, jointly indicted with defendant, as an accomplice, it was not error to fail to instruct the jury that a conviction can not be had upon the uncorroborated testimony of an accomplice.

ROSCOE VANOVER for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant, Zeke Anderson, was indicted in the Pike circuit court jointly with Booker Wright and A. R. Rowe for the murder of an Italian, Guiseppe De Riso. Upon a separate trial, appellant was convicted of manslaughter and his punishment fixed at fifteen years' confinement in the state penitentiary, from which judgment he has appealed.

The only ground relied upon for a reversal is that the court erred in failing to instruct the jury with reference to evidence of Booker Wright, claimed to be an ac-

complice, as required by section 241, Criminal Code, which provides:

"A conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show that the offense was committed, and the circumstances thereof."

The Commonwealth concedes that such an instruction should have been given if the evidence had shown that Booker Wright was an accomplice of the defendant in the killing, but insists that there is no evidence whatever to that effect.

The mere fact that Booker Wright was jointly indicted with the defendant for the offense is insufficient to necessitate or authorize the giving of such an instruction, as required by section 241, Criminal Code. The facts must determine whether he was an accomplice and, in order to make him such, it is necessary that his criminal participation in the crime charged be shown by evidence. Levering v. Commonwealth, 132 Ky. 666; Richardson v. Commonwealth, 166 Ky. 507; Nicoll v. Commonwealth, 169 Ky. 491.

If there is not some evidence conducing to show that a witness is an accomplice, it is not proper to submit the question as to whether he is an accomplice to the jury, nor to give the instruction provided for in section 241 of the Criminal Code. Elmendorf v. Commonwealth, 171 Ky. 410.

In order to determine, therefore, whether or not the court erred in failing to give such an instruction, we will have to examine the evidence relative to the connection, if any, of the witness, Booker Wright, with the homicide.

Dick Clevinger, a witness for the Commonwealth, testified that while Orville Rowe and the Italian were quarreling, the former had a stick in his hand and the latter had his right hand under his coat, when appellant came up and demanded of the Italian that he take his hand out from under his coat, which the Italian did not do; that appellant then said, "Somebody give me a gun and I will make him take his hand out of there or I will kill him;" that appellant turned around and said, "Where is Booker Wright?" and ran right to Booker and said, "Give me that gun," and then took hold of his

hand and pulled the pistol out with his left hand, put the gun in his right hand and ran straight back or walked fast to where the Italian was, the latter and Rowe still facing each other and exchanging words, and threw the gun on him in his face in that shape and says, "Take your hand out of there or I will kill you"; that he did not take his hand out from under his coat and appellant shot him; that a short time before the killing, he saw Anderson, Orville Rowe and the Wright boys and some other fellows, eight or ten of them together; and " a few of the boys were drinking, that is, Anderson and Rowe."

Booker Wright testified that he was seventeen or eighteen years of age; that appellant came to him and tried to get his pistol and he would not let him have it; that appellant came back the third time and jerked the gun out of his pocket and went up and shot the Italian; that appellant wrung the pistol out of his pocket; that he said to appellant, "Zeke, don't take it;" that the pistol was in his front pocket, the handle sticking out of his pocket; that while eating lunch in a restaurant shortly before the killing, appellant came in and sat down by him and then saw the pistol in his pocket; that appellant went out of the restaurant before he did, and the fight was in progress when he got out on the street; that appellant was larger than he was and he could not have kept him from getting the pistol.

Rice Roberts testified that appellant came up where Rowe and the Italian were quarreling; that he heard appellant say, "Boys, has nobody got a pistol in the crowd?" and no one answering, he said: "Where is Booker Wright?" That appellant then went up to Booker Wright, who was in front, almost opposite the witness, and had a pistol in his pocket; that appellant "got hold of his hand with his left hand and just took hold of the pistol, ran out and jabbed it right up in the Italian's face;" that he could not tell whether appellant took the pistol from Wright by force or not; that he did not see any force.

R. R. Crabtree testified that he saw appellant run up to where the difficulty between Rowe and the Italian was in progress and heard him say, "Where is Booker Wright?"; that appellant then ran back into the crowd out of sight of the witness and came back with a pistol in his hand, with which he shot the Italian.

Leonard Spradlin testified that he heard some one halloo, "Where is Booker Wright?", but he did not know who did the hallooing, but shortly he saw appellant approaching with a pistol in his hand and then heard the shooting.

G. B. Honeycut said that he heard appellant say: "Who has got a pistol?" and "Where is Booker Wright?"; that he then went over toward the building, but he did not see him get the pistol or see Booker Wright, but saw appellant later with a pistol in his hand, shooting at the Italian.

Appellant testified that when he saw Rowe and the Italian quarreling, he asked where Booker Wright was, walked down several steps to where he was, got Booker's pistol and walked up to where Rowe and the Italian were at that time. He stated that he got the pistol from Booker Wright with the intention of attempting to quell the disturbance, but does not state whether he told Wright what he wanted with it, or whether or not he took it by force.

It will therefore be seen from this evidence, which is all of the evidence upon the question that Wright did not even know of the difficulty until it was well under way, that he had no connection whatever with it except that appellant got from him the pistol with which he did the killing; nor is there any evidence that Wright knew for what purpose appellant wanted the pistol, or that he could have prevented him from taking it from him as he testified it was taken; hence it can not be said there was any evidence that Wright was an accomplice of Anderson in the killing, from which it results that the court did not err in failing to instruct the jury upon the question of the testimony of an accomplice.

Wherefore, the judgment is affirmed.